CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 14 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JAMES A. HEGEDUS, et al, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No.: 5:17cv53 |
| | ) |
| NATIONSTAR MORTGAGE LLC, | ) |
| | ) By: Michael F. Urbanski |
| Defendant. | ) Chief United States District Judge |

## MEMORANDUM OPINION

Plaintiffs James and Virginia Hegedus ("Plaintiffs" or "the Hegeduses"), appearing pro se, brought this action against Defendant Nationstar Mortgage LLC ("Defendant" or "Nationstar"), alleging misconduct related to Nationstar's servicing of a mortgage and the subsequent foreclosure on a residence previously owned by Plaintiffs in Sussex County, Delaware. Nationstar filed the present Motion to Dismiss for Failure to State a Claim on April 4, 2018. Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred both motions to United States Magistrate Judge Joel C. Hoppe for a report and recommendation. After hearing oral argument from the parties on June 26, 2018, the magistrate judge recommended granting Nationstar's motion in full. The Hegeduses filed objections to the report and recommendation on October 29, 2018.

For the reasons stated below, the court will **OVERRULE** the Hegeduses' objections, **ADOPT** the report and recommendation to the extent consistent with this opinion, and **GRANT** Nationstar's motion to dismiss.

I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Techs., Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154

(1985(3)) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed.").

Further, objections that only repeat arguments raised before the magistrate judge are considered general objections to the entirety of the report and recommendation. See Veney, 539 F. Supp. 2d at 845. As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505], 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates his previously raised arguments will not be given "the second bite at the apple [ ]he seeks." Id. Instead, his re-filed brief will be treated as a general objection, which has the same effect as a failure to object. Id.

## II.

Nationstar's Brief in Support of its Motion to Dismiss Plaintiffs' Amended Pleading argues that the Delaware Court's ruling precludes the Hegeduses' claims on both res judicata (claim preclusion) and collateral estoppel (issue preclusion) grounds.[1] The Hegeduses' amended complaint alleges that Nationstar breached its contractual and good faith obligations by failing to apply their payments to the loan interest and principal pursuant to the terms of the agreement.[2] Their original complaint included a claim for conversion,

---

[1] Because the court agrees with these grounds, there is no need to address Nationstar's alternative arguments.
[2] Plaintiffs' original complaint included a variety of claims arising from similar facts. Of these claims, all were dismissed save one claim for conversion; however, Plaintiffs were given leave to amend their breach of contract claim. Order Adopting R. & R., ECF No. 42, 1.

3

arising from similar facts, which survived Nationstar's first motion to dismiss. Nationstar brings the pending motion to dismiss both claims under Rule 12(b)(6).

A.

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must plead sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A plaintiff establishes "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations in the complaint as true and draw all reasonable factual inferences in the light most favorable to the plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678; see Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) (holding the court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments") (internal quotation marks omitted).

In recognition of Plaintiffs' pro se status and the Court's obligation to hold their pleadings to "less stringent standards than formal pleadings drafted by lawyers," the Court will also consider facts presented in Plaintiffs' opposition briefs and attached relevant documents. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (stating that a document

filed pro se must be liberally construed); Shomo v. Apple, Inc., 2015 WL 777620, at *2 (W.D. Va. Feb. 24, 2015) (considering "both the complaint and the factual allegations in Shomo's response ... in determining whether his claims can survive dismissal"). See Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006) (per curiam) (explaining that a court may, without converting a motion to dismiss into a motion for summary judgment, "consider . . . documents central to plaintiff's claim . . . so long as the authenticity of these documents is not disputed"). Furthermore, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document," the Court will credit the contents of the document over contradictory allegations in the complaint. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016).

**B.**

The Hegeduses' present claims arise from a mortgage agreement for property they owned in Sussex County, Delaware. Both parties agree that the Hegeduses entered into a mortgage contract with First Horizon Home Loan Corporation on the Sussex County property in 2006. Compl., ECF No. 1, 2 – 3. Nationstar entered a subservicing agreement with First Horizon on June 21, 2011, taking over for MetLife Bank, the previous servicer. Am. Compl., ECF No. 43, 2. Plaintiffs were notified of the change on August 25, 2011 and began sending their monthly mortgage payments to Nationstar. Id.

The terms of the mortgage agreement required that Nationstar apply mortgage payments first to interest, then to principal, and finally to other miscellaneous charges, including escrow items. Am. Compl., ECF No. 43, 2. Initially, Nationstar and Plaintiffs had

an escrow waiver, but after confusion regarding tax payments to the county, the Hegeduses allege that Nationstar improperly revoked the waiver, set up an escrow account, and placed a portion of their monthly payments into the account, thus preventing the payments from being applied to interest and principal and causing an eventual default in 2013. Id.

Foreclosure proceedings were then initiated in the Superior Court of Delaware. See Bank of N.Y. Mellon v. Hegedus, C.A. No. S15L-12-053 (Del. Super. Ct. Dec. 18, 2017). Plaintiffs contested the foreclosure; the Delaware case Bank of New York Mellon v. Hegedus (B.N.Y. Mellon) followed. See id. The Delaware Court found that the mortgage agreement between First Horizon and the Hegeduses did initially include an escrow waiver, but that, "On March 8, 2013, Nationstar sent a letter titled 'URGENT'" to the Hegeduses informing them that $140.17 of "Sussex County taxes, which had been due on September 30, 2012, ... had not been paid," that the delinquent payment constituted a default under the terms of the mortgage agreement, and that Nationstar might from there on require the Hegeduses to maintain an escrow account for future taxes and insurance. Id. at 1 – 2, 9. Nationstar again notified the Hegeduses of the delinquency five weeks later, and warned that if they did not provide proof of payment within 15 days, Nationstar would advance payment and "establish an irrevocable escrow account" to prevent future defaults. Def.'s Mem. in Supp. Ex. B, ECF No. 45-3 (Del. Ct. Op.), 29 – 30.

The Hegeduses did not respond to Nationstar, but did send payment to Sussex County. Del. Ct. Op. 4 – 5. The Hegeduses did not provide Nationstar with any proof of the tax payment, and so Nationstar also sent payment of the taxes to the county (unaware that the taxes had already been paid) and revoked the escrow waiver. Id. Sussex County returned

the duplicate payment to Nationstar. Id. The Hegeduses also reimbursed Nationstar; this money was placed in the new escrow account. Id.

Beginning July 16, 2013, statements sent to the Hegeduses reflected a negative escrow balance, but the Hegeduses continued to send payments reflecting the pre-escrow monthly bill amount. Del. Ct. Op. 4 – 5. Disagreements and contention continued, as the Hegeduses continued to pay monthly payments that were insufficient to cover both the escrow payments and monthly interest and principal. Id. By July 2014, the Hegeduses were two months behind in mortgage payments. Id. at 5 – 6. Nationstar sent a Notice of Intent to foreclose if they did not bring the amount current. Id. The Hegeduses did not do so, and B.N.Y. Mellon filed for foreclosure. Id.

The Delaware Court concluded that B.N.Y. Mellon, through Nationstar, had acted within the rights accorded by the mortgage agreement, which permitted the revocation of the escrow waiver "at any time" so long as proper notice was given, while the Hegeduses had breached the agreement by refusing to pay the escrow amount. Del. Ct. Op. 8 – 9. Judgment was accordingly entered for B.N.Y. Mellon. Id. The Hegeduses appealed; the Delaware Supreme Court affirmed the trial court's judgment. Hegedus v. Bank of New York Mellon, 190 A.3d 998 (Del. 2018), reargument denied (July 25, 2018).

Prior to the Delaware judgment, on May 30, 2017, the Hegeduses filed this action against Nationstar in this court. Compl., ECF No. 1. On April 18, 2018, Nationstar brought a motion to dismiss under 12(b)(6), arguing the Delaware decision precludes the Hegeduses' claims in this case. Def. Mem. in Supp., ECF No. 48, 1.

## C.

To assess Nationstar's preclusion argument, the court must determine the applicable source of law.[3] All federal courts must give full faith and credit to valid state court judgments, as required by federal statute. In re Genesys Data Techs., Inc., 204 F.3d 124, 127 (4th Cir. 2000). In providing such full faith and credit, 28 U.S.C. § 1738 directs federal courts to refer to the preclusion law of the state where a judgment was rendered—in this circumstance, Delaware law applies. See id. State preclusion law applies unless an exception to § 1738 governs. See Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).

Federal courts apply a two-step process to determine whether § 1738 should apply. In re Genesys Data Techs., 204 F.3d at 128. A federal court must first ask if state law would give a state court judgment preclusive effect. Next, the court must ask if Congress created an applicable express or implied exception to § 1738.

Under Delaware law:

> a party claiming that the doctrine of [claim preclusion] bars a subsequent action must demonstrate the presence of five elements: (1) the court making the prior adjudication had jurisdiction, (2) the parties in the present action are either the same parties or in privity with the parties from the prior adjudication, (3) the cause of action must be the same in both cases or the issues decided in the prior action must be the same as those raised in the present case, (4) the issues in the prior action must be decided adversely to the plaintiff's contentions in the instant case, and (5) the prior adjudication must be final.

Bailey v. City of Wilmington, 766 A.2d 477, 481 (Del. 2001) (per curiam). Following the hearing on the motion to dismiss and in their objections to Judge Hoppe's Report and Recommendation, Plaintiffs objected to the application of claim preclusion by contesting the

---

[3] Claim preclusion ordinarily cannot be resolved on Rule 12(b)(6) motions, but the court may address this defense because all necessary facts appear either on the face of the pleadings or in the state court documents, of which the court may take judicial notice. See Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

8

second element (the identity and/or privity between the parties in the first action and the current action), the third element (the similarity of the cause of action and issues in the two cases), and the fifth element (the finality of the prior judgment) of the analysis. Each objection will be addressed in turn.

First, Plaintiffs object to the application of preclusion due to the identity of the parties. B.N.Y. Mellon and Nationstar are plainly not the same party. Therefore, the court must determine if they are in privity. "Privity is a legal determination for the trial court with regard to whether the relationship between the parties is sufficiently close to support preclusion." See Higgins v. Walls, 901 A.2d 122, 138 (Del. Super. Ct. 2005) (quoting 18 James Wm. Moore et al., Moore's Federal Practice § 132.04[1][b] (3d ed. 2004)). To assess whether two parties are "sufficiently close" Delaware courts look to the parties' interests and ask if they are identical or closely aligned "such that they were actively and adequately represented in the first suit." Aveta Inc. v. Cavallieri, 23 A.3d 157, 180 (Del. Ch. 2010).

Plaintiffs argue there is no privity between Nationstar and B.N.Y. Mellon because the two are not identical, and further argue that Nationstar has "failed to provide any substantiation of privity." The original mortgage at issue, however, was between the Hegeduses and First Horizon, and Nationstar serviced this loan for First Horizon. B.N.Y. Mellon acquired the mortgage by assignment, with Nationstar still servicing. The Hegeduses' claims against Nationstar are based on their contention that the escrow account was illegitimate, and thus Nationstar defends itself by claiming authority, as B.N.Y. Mellon's mortgage servicer, to establish the account. In the Delaware case, B.N.Y. Mellon argued its right to pursue foreclosure against the Hegeduses because of past-due payments related to a

legitimately established escrow account. Del. Ct. Op. 2. Nationstar's interests were thus closely aligned with B.N.Y. Mellon's interests.

The Hegeduses further claim that the Report and Recommendation erred "by changing the word 'investor'…to the Bank of Mellon [sic]" and thus argue that "Nationstar was [not] in privity with Mellon [sic] at the time of the establishment of an escrow account." Pls.' Objs. to R. & R., ECF No. 64, 5, 9. Nationstar responds that changing the label "investor" to the name "B.N.Y. Mellon" does not alter the legal analysis. Nationstar is correct—as servicer for B.N.Y. Mellon, the investor in the Hegeduses' loan, Nationstar acted on behalf of the bank. The similarity of the issues argued (Nationstar's right to establish the escrow account and the bank's right to thereafter foreclose for escrow deficiencies) lead to the conclusion that Nationstar's interests were actively and adequately represented in the first suit. The two parties are in privity, satisfying this element of the preclusion analysis.

Next, Plaintiffs argue that the two cases' causes of action are not sufficiently similar to warrant preclusive effect. In determining this, Delaware courts follow a transactional approach in which claim preclusion may "be invoked to bar litigation…if the claims in the later litigation arose from the same transaction that formed the basis of the prior adjudication." RBC Capital Mkts., LLC v. Educ. Loan Tr. IV, 87 A.3d 632, 645 (Del. 2014). All issues which might have been raised and decided in the first suit are precluded, not only those issues that were decided. Id. The Hegeduses argue that the Delaware case concerned payment of a mortgage, while "the Virginia suit addresses the servicing deficiencies of Nationstar." See Pls' Objs to R. &. R., ECF 64, 4 – 5. The same contract underlies both cases, however, and both cases deal with Nationstar's authority to establish an escrow

account. The issues raised in this case could certainly have been raised and argued in the Delaware case—indeed, many were. This element is satisfied.

Finally, Plaintiffs argue that the Delaware Court's decision is not yet final as they "are still pursuing the vacation" of the judgment. Pls' Objs to R. &. R., ECF 64, 2. The Supreme Court of Delaware holds that "[i]f the language of the judgment evidences the judge's intention that the judgment be final, then the judgment is final." Plummer v. R.T. Vanderbilt Co., 49 A.3d 1163, 1167 (Del. 2012). Whether the judgment is final "depends on 'whether the judge has or has not clearly declared his intention in this respect in his opinion.'" Id.

The Delaware Court granted judgment in favor of B.N.Y. Mellon, entered judgment against the Hegeduses, and awarded damages to B.N.Y. Mellon. See Del. Ct. Op. 8 – 9. Plaintiffs did appeal the Delaware Court's decision, but the taking of an appeal actually supports a finding that the judgment is final. Playtex Family Prods., Inc. v. St. Paul Surplus Lines Ins. Co., 564 A.2d 681, 684 n.2 (Del. Super. Ct. 1989) ("[T]he Courts of this state have indicated . . . that judgments on appeal are final for [preclusion] purposes. This is clearly so, else the incentive would be for the losing party ... to simultaneously appeal and file suit in another jurisdiction, hoping for an inconsistent verdict." (internal citation omitted)). The Delaware Court judgment was final when the Delaware Supreme Court accepted Plaintiffs' appeal. Additionally, the public docket reflects that the trial court's judgment was affirmed on July 25, 2018. See Bank of N.Y. Mellon, C.A. No. S15L- 12-053. Finality is established.

**III.**

The case at hand is precluded. Therefore, the court rules now to **OVERRULE** the Hegeduses' objections, **ADOPT** the report and recommendation to the extent consistent with this opinion, and **GRANT** Defendant's motion to dismiss.

An appropriate order will be entered this day.

Entered: December 11, 2018

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge